circuit is now in session. Good morning and welcome to the Ninth Circuit. We have a pretty busy calendar and the first case we're going to hear is Johnson v. Lowe's Home Centers. I believe Mr. Yang, you're appearing remotely via Zoom. Good morning, your honors. May it please the court, my name is Simon Yang. I'm counsel for plaintiff appellant Maria Johnson and I'd like to respectfully request that five minutes of plaintiff's allotted time be reserved for rebuttal. In this lawsuit against defendant appellant Lowe's Home Centers, LLC, plaintiff alleges claims pursuant to California Labor Code Private Attorney's General Act 2004 or PAGA. Plaintiff seeks reversal of the judgment entered in favor of defendant because of two errors. First, the district court erred by compelling plaintiff's individual PAGA claim to arbitration. In doing so, the district court ignored the terms of the relevant arbitration agreement. Second, the district court erred by dismissing plaintiff's non-individual PAGA claims. In doing so, the district court failed to apply California law as to statutory standing under PAGA. As is axiomatic in Federal Arbitration Act jurisprudence and as the United States Supreme Court again reconfirmed in Viking River Cruises v. Moriana, parties cannot be coerced into arbitrating a claim absent an affirmative contractual basis for concluding that the party agreed to do so. But here, in ordering arbitration of plaintiff's individual PAGA claim, the district court impermissibly coerced arbitration of private attorney general claims without the affirmative contractual basis for concluding the party's agreed to do so. Counsel, is it your position that the Supreme Court in Viking River did not authorize referral of the plaintiff's individual claims to arbitration, thereby splitting the representative claims? Your Honor, in Viking River, the Supreme Court considered a different arbitration agreement. And in the arbitration agreement that it considered, a plaintiff appellant would agree that the Supreme Court authorized the terms of that arbitration agreement to be enforced to permit the arbitration of what the Supreme Court titled individual PAGA claims. But wasn't the issue that the court addressed the California preference for not splitting claims and therefore the U.S. Supreme Court struck down that provision of California's precedent and authorized the splitting, did it not? Your Honor, I believe that there's a distinction between what a state law rule may impose on an arbitration agreement and what the private parties to an arbitration agreement may consent on their own. Nothing in Viking River or the subsequent California Supreme Court decision in Adolf v. Uber Technologies precludes parties to an arbitration agreement from requiring categorical treatment of private attorney general claims, nor does anything in Viking River or Adolf permit a court to rewrite an arbitration agreement that decides on categorical treatment of private attorney general claims. But can't we harmonize the two decisions by ruling that the California Supreme Court in Adolf's answered the statutory standing question and held that she could continue to serve as a statutory representative for the other participants in the plan, but her own individual claims have to be carved off for arbitration? Isn't that the effect of the two-court ruling so that we can harmonize the decision? That would be the effect, Your Honor, in any situation where an arbitration agreement specifically contemplates and permits the arbitration of individual PAGA claims. Here, the district court recognized that the arbitration agreement between Ms. Johnson and Lowe's provides it, quote, there shall be no right or authority for any dispute to be arbitrated as a private attorney general action. But the district court ordered a private attorney general action to be arbitrated. The district court also acknowledged that the party's arbitration agreement states that, quote, an employee must not seek relief on behalf of any other parties in arbitration. But here, the district court ordered an employee plaintiff, Ms. Johnson, to seek relief on behalf of another party, California's Labor and Workforce Development Agency, in arbitration. And finally, the district court knew that the party's arbitration agreement stated that, quote, any claims covered by any deemed unenforceable waiver, a waiver provision, may only be litigated in a court of competent jurisdiction. But again, the district court ordered some claims covered by an unenforceable waiver provision, i.e. plaintiff's individual PAGA claim, to be arbitrated. Because the district court cannot compel arbitration precluded by the party's claim, the order of compelling arbitration must be reversed. In Adolph, the California Supreme Court said a plaintiff has statutory standing to pursue a representative PAGA claim in court. Is it, would that representative plaintiff, representative PAGA claim, the plaintiff for that claim, would he or she still have to have Article III standing, separate from the statutory standing? Yes, Your Honor. I don't believe anything that the California legislature can enact in PAGA or otherwise would be able to remove Article III standing issues. Is it possible for someone to have Article III standing for a representative PAGA claim, but not statutory standing? Or is it kind of subsumed under because it's a higher standard? Your Honor, I think that it's correct to characterize it as subsumed by the broader standing requirements. There is an argument by the defendant in its supplemental post-Adolph letter brief that the California Supreme Court's decision in Adolph somehow acts as an end around Viking River because there would be potentially some issues germane to the either Article III or statutory standing analysis that would remain in court and not be entirely compelled to arbitration. That type of argument already has been completely addressed by the California Supreme Court in Adolph and rejected. There's simply no reason that the parties cannot use the procedure that Adolph outlines, which is for the trial court to exercise its discretion to stay non-individual PAGA claims pending the outcome of an individual arbitration and then subsequently use a code of civility. I mean, Adolph didn't discuss Article III standing. That's why I was raising that because, I mean, one of the benefits of arbitration that it's very quick and a lot of arbitrations, they don't even send lawyers. In some cases, it's a paralegal or someone else. So if in arbitration, you decide the issue of, you know, who's an aggrieved employee and then that can have issue preclusion in court and the representative PAGA claim. I mean, it's possible that the benefits of arbitrations go away if then you have to bring in expensive lawyers to litigate the arbitration. So that's why I was asking the Article III question to see if it's a practical matter, if it matters or not. To attempt to answer your question, whether it's related to Article III standing or the California statutory standing requirements under PAGA, I don't believe that there's any difference in how a trial court should be able to proceed while ensuring that the parties are able to arbitrate the individual issue and not have a court relitigate that issue. Turning to any other arguments that Adolph might somehow act as an impermissible end around Viking River, Viking River itself is very clear that nothing germane to the FAA would support dismissal of non-individual PAGA claims. As Justice Sotomayor's concurring opinion stated, the court concluded that the FAA poses no bar to the adjudication of Respondent Angie Moriana's non-individual PAGA claims. Let me ask you a practical question. Let's assume that we disagree with your original premise and that her individual claims must be arbitrated and that the district court erred in failing to consider whether or not it should stay the non-representative claims. If that happens on remand, what's the practical effect going to be if she litigates the PAGA claims in the arbitration and loses on those claims? Would there be any kind of res judicata or collateral estoppel effect on her ability to re-litigate those same claims on a representative basis for the non-participants in the arbitration? Yes, Your Honor, Viking River is clear that there should be no re-litigation of issues. If Ms. Johnson proceeds with arbitration of her individual PAGA claims and fails to prevail, then that should be either, I don't believe it would be res judicata, but I believe it would be a collateral estoppel or some sort of issue preclusion. Can I interrupt for a minute? I think the answer is given to us pretty clearly in Adolf. Adolf says if she loses the individual PAGA claim in arbitration, she cannot go forward with the representative PAGA claims. That's how I read it. I mean, that seems clearly stated in Adolf. In the district, the court with the representative claims can wait for the outcome of the arbitration, but if the district court goes forward with the representative PAGA claims, all that effort can be thrown out the window if she loses the arbitration. That would be correct, Your Honors. Yeah. And that just comes out of Adolf. If you want to reserve five minutes, do you want to say that? I'm happy to answer any questions Your Honors may have at this juncture, but if there's nothing further at this point, I would like to reserve the remaining time. Thank you. Thank you. Good morning, Your Honors. May it please the court. Jason Schwartz on behalf of Lowe's. I'd like to address three issues, if I might. Number one, the representative waiver. Two, the severance clause. And three, the issue that you've just been discussing, what happens to the non-individual claims. With respect to the first issue, the representative waiver, the plaintiff, Ms. Johnson, argues that it is somehow a wholesale waiver of PAGA claims. That is not so. We know that for at least five reasons, Your Honors. If you look at the totality of the agreement, there are five indicators of exactly what the party's intended. That section is labeled representative action waiver. We now know from Viking River that that means representative in the second sense, meaning bringing a claim in arbitration on behalf of other employees. That's not permitted. Number two, we know it's not intended to be a wholesale waiver because the very sentence with the waiver begins, to the extent permitted by law. Under California Civil Procedure Code 1641, those words are not surplusage. They must be given effect and meaning. Number three, the very next sentence begins, this means you can't bring a claim on behalf of, among others, other allegedly aggrieved employees. So clearly, again, this reinforces the intent. Number four, the concluding sentence in that section refers to the arbitrator's ability to preside over individual claims. That's exactly what this portion of the PAGA claim now is under Viking River. And then number five, the agreement itself applies to the fullest extent permissible to every claim that arises out of Ms. Johnson's employment. She signed it twice upon two different promotions. And among other things, it refers to claims under state statutes. So, of course, this was the intent. Pre-Viking River, they didn't have the words to capture the non-individual claims versus the individual claims. But the purpose of this agreement was to say everything possible is going to be arbitrated on an individual basis. Second, even if you believe that the representative action waiver is a wholesale waiver of PAGA, which is what Ms. Johnson argues here, and that flies in the face of all five indicators I just gave you. But even if you believe that, there is a severance clause that operates exactly like the severance clause in Viking River. So the one distinction that the plaintiff focuses on is in Viking River, it said any portion that's unenforceable is severed. The rest is enforced. Here, it says any, quote, provision. It uses the word provision instead of portion. And the rest is enforced. The two cases that plaintiff points to to say that this is somehow a distinction with a meaningful difference here are two district court cases, Potts and Harper. Those cases are actually super instructive here, Your Honors. If you look at Potts, in that case, the plaintiff, the party submitted a notice of supplemental authority of the Johnson District Court decision. And in footnote two of Potts, the district judge addresses this and says, yeah, Johnson got it right. This case is different because in Johnson, the PAGA waiver refers to claims on behalf of other aggrieved employees. And in Johnson, that portion that would be a wholesale waiver, if it is, is severable. And can I interrupt for just a minute? Of course, Your Honor. You're down in the details. I'm trying to figure out where you're going. You're arguing that the individual PAGA claim goes to arbitration. What happens to the representative PAGA claims? Do they go forward in court under Adolf? They do not, Your Honor. And thank you for that clarification. So my first two points just deal with the individual claims that they go to arbitration. And if there's any doubt, the severance clause operates in the same way that it did in  the non-individual claims, Your Honor. I agree that that is what Adolf says should happen. Lowe's argument here is that that outcome is preempted by the Federal Arbitration Act. Yeah. So you're saying that that's inconsistent with not just the act, but are you saying that we look at Viking River for the inconsistency? We do, Your Honor. And specifically what I'm saying is the reasoning of Viking River is that the Federal Arbitration Act specifically authorizes that the claim is split in two, paired away. The individual claim is permanently and completely separated. It overrules that part of Iskanian, which said it was a unified claim that could not be separated. That's what Adolf does, right? Well, Adolf doesn't do that, though, Your Honor, because it does two things contrary to that. It recognizes that rule. It says the United States Supreme Court told us we can't allow relitigation of issues. But then what it does is, first of all, it makes the litigation in court, the avoiding the relitigation, dependent upon, in Adolf's words, a discretionary stay. So what is a federal preemptive right that my client is entitled to under the FAA becomes a discretionary trial management tool under the Supreme Court, the California Supreme Court's decision in Adolf. Discretionary as to stay versus dismissal or discretionary as to stay or litigation? The latter, Judge Tallman, discretionary as to stay or concurrent litigation of the same issues. And in fact, if you look at my colleague's reply brief at page 12, and I recognize this was pre-Adolf, he said that upon remand, these cases should be litigated other lawyers are arguing the same thing, because the California Supreme Court did not say it was a mandatory stay. What it what it said was it's a discretionary stay and that the issues remain unitary, that those issues that are committed to arbitration are still theoretically in court through some sort of fiction that the U.S. Supreme Court said the exact opposite. You can't be unitary and completely separate. So if the if the court declines to stay and goes forward with the representative or non-individual PAGA claims, arbitration goes forward and arbitration on behalf of the individual plaintiff fails. What happens? I mean, I've given what I think is the answer. What's your answer? Right. I mean, we would argue that that plaintiff loses standing to proceed with the claim. I think that's what Adolf says. That's correct, Your Honor. But the issue is I think that doesn't help you. I think that hurts you. That is to say, the ability to go forward with the representative claims is dependent upon success in the arbitration. Your Honor, I respectfully disagree because Adolf allows for the trial court's discretion to litigate the same issues in two different fora at the same time, even though the Supreme Court said as a matter of federal right, you can't be forced to do that. The second reason that it violates the FAA, where does the court say that the Supreme Court said? And in fact, the Supreme the California Supreme Court in Adolf parrots this back. They say that what we were told by the United States Supreme Court in Viking River is that there is no relitigation of issues committed fully and completely to arbitration. But they turn that into a discretionary matter. So, for example, Your Honor, discretionary matter in the sense that it can go forward. But the proceeding in the court will be controlled by the outcome in the arbitration. Well, only if the arbitration reaches an outcome first. What if the judge in court makes a ruling on these two elements, that the individual is an employee who was aggrieved? Then what happens? I assume I'm confess I'm reading between the lines in Adolf. I think everything that happened in court is set aside because Adolf is very clear that the ability to go forward in court is dependent upon success in the arbitration. Respectfully, Your Honor, I think Adolf is very clear that if the discretionary stay is granted, that's what would happen. The flip side of this problem, not only does it mean I don't think that Adolf is at all clear on the point, at least it's not at all clear that I can read it the way you do. I understand, Your Honor. And if not only does Adolf leave issues concurrently in court up to discretion that are committed solely to arbitration on the FAA and Viking River, but it also does the reverse. And by that, I mean it allows the arbitrator to exceed the scope of what the parties contracted for because the arbitrator is then deciding not only individual issues, but with individual consequences. But they are deciding two of the essential elements of the group cause of action, which the parties did not agree on that point. I mean, what's the practical impact? I know you're saying, OK, if if a plaintiff wins in arbitration and there'll be a preclusive effect in the PAGA representative claim in court about what a grievant employee is, but to be in federal court, the plaintiff would have to show Article 3 injury, in fact. And if you show Article 3 injury, do you by definition show that the person is an aggrieved employee? In other words, if they establish that they are aggrieved in the arbitration, does that establish that they are aggrieved for purposes of the court proceeding? No, no. Is that a the representative PAGA claim you would have to show Article 3 injury to be in federal court? And if you show that, does it really matter? Does a statutory standing matter in the sense of you? If you meet Article 3 injury, do you by definition show statutory standing? I don't know the answer to that. I'm asking you. Right. I'm not sure. I think there is a distinction there in the sense that in order to proceed with your group PAGA claim on behalf of other employees, you have to show that you personally were the victim of a specific labor code violation that affected those other employees. That's one of the elements that you will be demonstrating to the arbitrator. Let's say if the discretionary stay is granted. And that means that the arbitration is now enveloping portions of the group court case beyond the agreement of the parties in violation of conception and in violation of epic systems. The parties only agreed to to arbitrate individual. I understand it as a theoretical matter that you would have preclusive effect, aggrieved employee, a person prevails in arbitration that could have preclusive effect, aggrieved employee for statutory standing in federal court. But again, if you have to show Article 3 standing, do you by definition show that you're an aggrieved employee? I don't know the answer. And that's what I'm asking you. I think conceptually those ideas are distinct, Your Honor, because the statutory standing is narrower, meaning you have to show that you were the victim of a specific labor code violation. And under this court's precedent in Magadha, for example, the same labor code violation that the other allegedly aggrieved employees encountered. So my point is that you've contractually agreed to an individual arbitration with individual consequences. But what happens is you're now forced to make a choice that Viking River said you shouldn't be forced to make, which is if you want to enforce your right to arbitration, you now have to arbitrate more than you contractually agreed to arbitrate. Or your other option is forgo your federally protected right to an individual arbitration because you don't want the arbitration with, for example, the paralegal and the expedited procedures. You don't want that arbitration to be determinative of at least some elements of this court cause of action for other employees. That's what's prohibited by Viking River. So I'm not saying that the California Supreme Court or really the California legislature couldn't have come up with a different solution. But the solution they chose was to reinvigorate the rule of Estanian that this is somehow theoretically a unitary cause of action that remains in two places at once. It's both in court and in arbitration concurrently. That's prohibited by Viking River. The Supreme Court told us you can't do that. The Supreme Court said you can't do that under California law, but it mistook California law. We now have Adolf. No, Your Honor, respectfully, the Supreme Court said you can't do that under the Federal Arbitration Act, that because the Federal Arbitration Act supersedes Estanian, this is the first part of the holding in Viking River that Estanian's rule that the claim is unitary and cannot be divided is preempted by the Federal Arbitration Act and that the individual portion. Well, that's right. But Adolf backs off then. No, respectfully, again, Your Honor, Adolf doesn't back off. It doubles down. It says that the Estanian rule is back. It literally says the claim is unitary, that it remains in two places at once, which I think is an oxymoron. I don't know how you remain in two places at once, but because it does and it says that issues that are committed to arbitration remain in court and issues that are committed to court go to arbitration against the party's contract. That solution violates the Federal Arbitration Act. I'm not saying that California could not have designed another state law solution, but the solution they designed was to take Estanian and bring it back to life. That is preempted by federal law. Thank you, Your Honor. I'm confused. It seems to me, I read Adolf to simply answer the question, as Justice Sotomayor suggested in Viking River, that there is statutory standing and that addresses the standing concern. I didn't read either Viking River or Adolf's to really answer a lot of the questions that we've asked here today. I mean, doesn't it depend on what the claim is? I know maybe it's a problem with the payroll stub that they give employees, and that may be applicable to more workers than Ms. Johnson, but it would depend on what the statutory violation of California labor law is, wouldn't it? I don't think so, Your Honor. The issue of whether the named plaintiff is aggrieved is going to be decided in court. And then they say, in order to get around the U.S. Supreme Court's holding under the FAA that you can't relitigate, we will allow our trial courts to grant a discretionary stay of their proceedings. That's the problem, Your Honor. They turn what is a federal preemptive right into something that depends upon the discretion of the trial judge.  In this very case, at page 12 of the reply brief, counsel says when they go back to trial court, they're going to argue that these claims should be litigated concurrently. OK. Great, thank you. Thank you, Your Honors. Whenever you're ready, Mr. Thank you, Your Honors. Starting with the question as to whether Adolf somehow acts as an end around Viking River, again, Plaintiff Appellant Ms. Johnson would like to emphasize that Viking River is unequivocal that its dismissal of non-individual PAGA claims owed entirely to its interpretation of state law issues related to statutory standing under PAGA. Again, the opinion concludes that under its FAA analysis, quote, under our holding in this case, those non-individual PAGA claims may not be dismissed simply because they are representative. Again, nothing in the FAA would permit the dismissal. It's strictly its interpretation of California statutory standing. Switching gears, I'd like to address a distinction between the arbitration agreement here and the arbitration agreements considered in both Adolf and Viking River and many other cases that have subsequently come down. In both Adolf and Viking River, the arbitration agreements considered a representative waiver, a waiver of representative claims. And as the Supreme Court in Viking River outlined, that term itself causes a confusion because of the dual nature use of that term, both in its first potential meaning of being representative for an absent party, like California's LWDA, and its second meaning with respect to being representative on behalf of other individuals. Here, there is no ambiguity that the court needs to be examining to determine the party's meaning. Here, the representative action waiver is very clear that, quote, there shall be no right or authority for any dispute to be arbitrated as a private attorney general action. Whether or not a individual public claim or non-individual public claim is being considered, the arbitration agreements terms are unequivocal. There is no right to arbitrate private attorney general action. Defendant here is making arguments in a post-Viking River, post-Adolf lens that belies its prior interpretation of the plain language of that agreement. In the excerpts of record in its prior motion to compel briefing before the district court, defendant itself read the representative action waiver consistent with plaintiff. It argued, in excerpts of record 83, that both arbitration agreements explicitly preclude plaintiff from bringing a PAGA action or excuse me, a PAGA claim in any form. Not just in arbitration. According to Lowe's itself, its reading of its arbitration agreement in the representative action waiver would foreclose the arbitration of individual private attorney general action claims. Counsel, let me let me ask you a question. Why shouldn't we just confine our ruling to whether or not the district court erred in dismissal and send this matter back to the district court and say, in light of Adolf's, that cannot support dismissal, your choice now is to stay or go forward with the non participant claims and send Ms. Johnson off to arbitration. Your Honor, I don't think that would be an improper result, except for the fact that that second question of whether the district court erred in dismissing the non-individual private claims. According to Ms. Johnson, it is a issue that the court need not even address. Again, Ms. Johnson's position is that the representative action waiver and the severability terms in this specific arbitration agreement require a reversal of that preliminary decision to compel arbitration of those claims. But if the court were to affirm that portion of the district court's order, Your Honor, Judge Tolman's suggestion is inappropriate from Plaintiff Johnson's perspective. As there's 18 seconds left, unless the court has further questions for Plaintiff, Ms. Johnson submits this matter and appreciates your consideration. Great. Thank you both for the helpful argument. The case has been submitted.
judges: FLETCHER, TALLMAN, LEE